UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SANDY SMITH, JR.                      CIVIL ACTION NO. 08-cv-0558

VERSUS                              JUDGE HICKS

STEVE PRATOR, ET AL             MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Sandy Smith, Jr. ("Plaintiff") filed this pro se civil rights action against Caddo Parish Sheriff Steve Prator and several officials and employees at the Caddo Correctional Center ("CCC"). Plaintiff alleges that Defendants are liable to him under 42 U.S.C. § 1983 in connection with the care or lack of care Plaintiff received for a dental problem when he was housed at CCC as a pretrial detainee. Before the court is a Motion for Summary Judgment (Doc. 45) filed by Defendants. For the reasons that follow, it is recommended that the motion be granted.

**Summary Judgment Standard**

Under Fed.R.Civ.P. 56(c), a summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). An issue is "genuine" if there

is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; B & A Pipeline Co. v. Dorney, 904 F.2d 996, 1002 (5th Cir. 1990).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Relevant Facts**

Defendants present their own affidavits, an affidavit from Dr. Rodney Pendleton, and medical and other jail records. Defendants directly challenge most of the allegations in Plaintiff's complaint, placing the burden on Plaintiff to come forward with his own competent summary judgment evidence sufficient to create a genuine issue of material fact. Plaintiff filed a 242-page opposition (Doc. 76), which is made up of seven separate oppositions targeted at specific defendants. Plaintiff has included several affidavits or declarations pursuant to 28 U.S.C. § 1746 from himself and other persons. Defendants' evidence, as well as Plaintiff's, will be summarized below.

Plaintiff testifies that he made his first request for dental treatment on February 26, 2008. He attaches to an affidavit a kite communication in which Plaintiff wrote: "I need to see if you can stabilize my tooth. I had a root canal done but not completed." The staff

responded in writing the next day that the dental waiting list was five or six months long. Plaintiff was advised that he was on the list but should expect a long wait. The response added that pain medications were available by kite request or from the commissary, and Plaintiff was told that writing multiple kites would not get him seen any sooner.

Plaintiff filed an emergency grievance on March 12. He referenced his earlier kite and complained that he had yet to receive attention from the dental staff. He claimed that his tooth had completely broken as a result of neglect. Plaintiff asked that he be able to use his personal dentist to have his tooth restored.

Deputy Alfred Dinkins, who serves as the grievance officer at CCC, testifies that he referred this request to the Warden because of its unusual request to see a private dentist. Warden Robert Wyche testifies that he determined that the request was not in the best interest of jail security because Plaintiff was charged with attempted second degree murder and was being held as a federal fugitive. Accordingly, he denied the request.

Plaintiff submits an affidavit from Christopher Hatch, who testifies that he spoke on behalf of Plaintiff with CCC Medical Director Sheila Wright on March 17. Wright told him that Plaintiff would not get priority treatment unless he had an abscess. Otherwise, he would be treated for pain and given antibiotics, and it would be a while before Plaintiff could see a dentist.

Defendant Jennifer Jackson testifies that she is an LPN employed at CCC. She states that on March 17, the same day as Mr. Hatch's call, she offered Plaintiff sick call for his

dental situation, but Plaintiff refused. This refusal is noted in Plaintiff's medical records, together with a notation that a deputy was to get a signed refusal. Plaintiff testifies: "I never told Jackson that I denied or refused dental treatment on March 17, 2008." He goes on to say that he never received a "dental refusal form," and he accuses Jackson of placing false documentation in his medical record. Plaintiff, however, is confused or is trying to confuse the court by testifying about refusing dental care when Nurse Jackson testified only that she offered sick call for the dental situation. That does not necessarily suggest that she offered dental rather than the ordinary medical care that is afforded by the medical staff via sick call.

Plaintiff also offers an affidavit directed at defendant Deputy Timothy Young. Plaintiff testifies that, on or about March 18, when "dental/medical personnel call the housing unit Echo for me to see the dentist, Young told the medical personnel that I refused dental care treatment." Plaintiff testifies that Young lied to Nurse Jackson about the refusal, and lied to Plaintiff by saying the dental/medical personnel would call back later for Plaintiff. These lies, Plaintiff says, delayed and interfered with his receipt of dental care.

Plaintiff filed another emergency grievance on March 26. He wrote that he had, since the first grievance, submitted at least three more kites to which he had not received a response. He added that he had not received any antibiotic or pain medicine. Deputy Dinkins testifies that he consulted the medical department and, based on their response, rejected the grievance because Plaintiff's "time was coming up very soon."

Plaintiff submits the affidavit of Emily Craig, who testifies that she spoke on behalf of Plaintiff with Medical Director Wright on April 2. Wright told her that she would pull Plaintiff's file and have her nurse call Plaintiff in to take care of his tooth. Craig testifies that Wright told her there were protocols for abscesses and that it may work to his benefit if it was infected. Craig adds that Wright told her that Wright could put Plaintiff on antibiotics while he waited to see the dentist.

Nurse Jackson testifies that Plaintiff came to the medical unit on April 2, the same day as Ms. Craig's call, for an evaluation of a broken tooth. Jackson wrote in the medical records:

> No infection noted. Gave pain meds. Advised inmate of long waiting list. States last dental visit was 10 yrs. ago.

In accordance with standing physician orders, Nurse Jackson provided Plaintiff with a five-day prescription for acetamenophin and Orajel.

Plaintiff challenges Jackson's testimony on some points. He testifies that he "never told Jackson that (I) haven't been seen by a dentist in 10 yrs." He also testifies that Jackson never examined his dental problem before placing him on the waiting list and that his tooth had an abscess when Jackson examined him on April 2, but Jackson "claim that she didn't see it."

Attorney Elton Richey testifies that he mailed a letter to Sheriff Prator on April 14 or 15. Richey asked the Sheriff to look into Plaintiff's several unfulfilled requests for dental care. Sheriff Prator testifies that someone in his office, on April 21, directed the letter to the

attention of Warden Wyche, and the Warden responded to Mr. Richey by letter of April 23. He explained that Plaintiff had been on the dental list since February 17, but there were 199 inmates on the waiting list to see the two contract dentists who work at CCC.

Wyche testifies that CCC, which houses between 1,300 and 1,500 inmates, maintains a 24-hour staffed medical clinic, supplemented by contract physicians and dentists who visit the facility on a regular schedule. The contract dentists see patients at CCC on Monday mornings and Wednesday evenings. One inmate per week can be sent to a nearby state prison to be examined by an oral surgeon.

Wyche testifies that a significant number of the inmates have not had regular dental care before their arrival at CCC, which causes the backlog. He states that he relies on the medical staff, in conjunction with protocols recommended by the contract physicians and dentists, to determine which dental matters can be handled in a routine fashion and which require emergency attention. Wyche stated in his letter to Richey that he had asked the medical staff to review Plaintiff's complaints to see if Plaintiff was an emergency case. Wyche also explained to Richey why Plaintiff could not be allowed outside the jail to see his private dentist.

Dr. Rodney Pendleton, D.D.S. testifies that he works as a dentist at CCC on a contract basis, and he developed the dental protocols that were in use at CCC in 2008 when Plaintiff's claims arose. Dr. Pendleton testifies that he examined Plaintiff on April 24, 2008 for a broken tooth. He saw that the tooth already had a root canal, which had been drilled through

a gold shell. Because of the prior root canal, "the nerve tissue in that tooth would have been absent, and the patient should have had no pain associated with this tooth." Medical notes indicate that on April 28, Plaintiff was directed to take over-the-counter pain medication and notify medical staff if his problem persisted on worsened. Dr. Pendleton testifies that he extracted the tooth on May 1, and on May 28 he took a dental impression to allow the construction of a replacement cosmetic tooth. Dr. Pendleton testifies that dental emergencies at CCC are handled in an expeditious fashion, and, in his professional opinion, Plaintiff's situation did not present a dental emergency. It is also his opinion that, based on his review of the medical chart, the problem was dealt with appropriately and in accordance with the dental protocols that he developed and CCC adopted.

Plaintiff states in various affidavits and declarations that he "suffered from a broken and infected tooth" for 57 days between his first request for dental attention and the exam by Dr. Pendleton. He complains that Nurse Jackson is "not trained in the dental profession" and "can not diagnose any illness or symptoms." He also states that Jackson "never examine my dental problem" so that it was impossible for her to "know my dental emergence." He adds that his tooth had an abcess that Jackson claimed not to see. In another affidavit, Plaintiff testifies that he suffered with severe pain for 57 days from a "broken and infected tooth," and he had to be placed on antibiotics for a week "for the infection that built-up" before the tooth could be extracted. He says the tooth "had to be extracted because of the delay of 57 days from receiving dental treatment." Plaintiff states that he was made to suffer unnecessary and

wanton infliction of pain because Sheriff Prator wants to "keep medical cost at a reasonable level." Plaintiff takes issue with Prator's belief that it is adequate to have a dentist visit CCC, which houses 1,300 to 1,500 inmates, twice a week for a combined total of eight hours.

**The Constitution and Inmate Medical Care**

For a convicted prisoner or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92. Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

**Qualified Immunity**

Defendants argue that Plaintiff has not created a genuine issue under the Estelle standard. They also raise the doctrine of qualified immunity. It protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 129 S.Ct. 808, 815 (2009). "The plaintiff's evidentiary assertions-but not mere allegations-are taken as true in the court's evaluation of qualified immunity." Terry v.

Hubert, __ F.3d __, 2010 WL 2471834 (5th Cir. 2010). Each defendant who raises immunity is entitled to a separate examination. It is improper for a court to analyze a group of defendants' actions collectively in assessing qualified immunity. Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir.2007).

**Analysis**

The summary judgment record shows that Plaintiff was not seen by a dentist as promptly as he wished, but he was afforded care by the Nurse Jackson and the medical staff until Plaintiff reached the top of the dental wait list. The medical staff did not observe anything that indicated an emergency dental situation that would require more immediate attention by a dentist. When Dr. Pendleton did examine Plaintiff, he found a condition that should not have any pain associated with it, and he waited several days before actually extracting the tooth. He offered his professional opinion that Plaintiff's situation did not present a dental emergency. These facts, and others regarding the response of prison officials to letters and grievances, do not indicate deliberate indifference on the part of any defendant. Rather, each defendant responded in a timely and reasonable fashion. Plaintiff was examined by medical professionals, and he eventually had his tooth removed by a dentist.

Plaintiff disagrees with Nurse Jackson's finding that he did not have any infection, and he challenges her dental credentials, but the summary judgment record shows that Jackson did examine Plaintiff in response to his complaints. Plaintiff may disagree with her

diagnosis or recommended treatment, but such disagreements may not form the basis of a Section 1983 claim. Norton, 122 F.3d at 292.

Despite the extraordinary length of Plaintiff's opposition materials, the court has found in them only a few lines of relevant testimony, which was quoted and summarized above. Plaintiff makes conclusory statements that he suffered with "severe" pain for 57 days, but there is no evidence of an underlying dental or medical condition that would give rise to such pain, and "[c]onclusory affidavits are not sufficient to defeat a motion for summary judgment." Young v. Equifax Credit Information Services, Inc., 294 F.3d 631, 639 (5th Cir. 2002). Despite the bulk of Plaintiff's submissions, he has not presented specific testimony that would create a genuine issue of material fact with regard to the demanding deliberate indifference standard.

Plaintiff does testify specifically that Deputy Timothy Young, when medical personnel called the housing unit for Plaintiff to see a dentist, told them that Plaintiff refused dental care. Plaintiff does not, however, offer any basis for his personal knowledge that the medical department actually offered dental care on that occasion as opposed to ordinary medical care from the medical staff. The records show that what Plaintiff was offered at that time was the opportunity to make sick call and see the medical staff about his dental situation. Plaintiff was later seen by the medical staff about the matter, but he still had to wait until he could been seen by a dentist for his tooth to be removed. Accordingly, any alleged wrongdoing by

Deputy Young did not result in any medical harm to Plaintiff or delay in the removal of the tooth.

The record shows that Sheriff Prator, Warden Wyche, and Deputy Dinkins all responded in a reasonable fashion to the various letters and grievances Plaintiff submitted. Plaintiff is unhappy that Deputy Dinkins denied his grievances, but the record shows that Dinkins consulted the warden or the medical staff as a basis for the decision. An inmate does not have a protected liberty interest in having a grievance resolved to his satisfaction. Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). And supervisory officials are entitled to defer to the judgment of medical professionals. See e.g. Vasquez v. Dretke, 226 Fed. Appx. 338 (5th Cir. 2007) (warden and director of clinical services "were not deliberately indifferent" when "they deferred to the judgment of medical professionals by denying [a prisoner] dentures"); Garza v. Chaney, 2007 WL 4367882, *6 (S.D. Tex. 2007) ("it was reasonable for Assistant Warden Mundy to rely on the medical department to handle the medical needs of the inmates"); and Jones v. Livingston, 2005 WL 3618316, *3 (S.D. Tex. 2005) ("it would be reasonable for Warden Morales to refer the matter to, and rely on, the medical decisions of Dr. Herrera").

Accordingly,

**IT IS RECOMMENDED** that the **Motion for Summary Judgment (Doc. 45)** be **granted** and that all claims be **dismissed** against all Defendants.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 30th day of June, 2010.

							_____
							MARK L. HORNSBY
							UNITED STATES MAGISTRATE JUDGE